FILED

2012 Feb-09  AM 08:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| RODNEY DILLARD | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED FOOD AND | ) | |
| COMMERCIAL WORKERS UNION | ) | |
| LOCAL 1657; UNITED FOOD AND | ) | CASE NO. CV 11-J-0400-S |
| COMMERCIAL WORKERS | ) | |
| INTERNATIONAL UNION, in its | ) | |
| individual capacity and in its capacity | ) | |
| as Trustee of LOCAL 1657; and | ) | |
| FEDERATION OF AGENTS AND | ) | |
| INTERNATIONAL | ) | |
| REPRESENTATIVES, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Pending before the court are a motion for summary judgment by defendant Federation of Agents and International Representatives' (FAIR) (doc. 22), a memorandum in support of said motion (doc. 23), evidentiary submissions in support of said motion (doc. 24), a motion for summary judgment by defendant United Food and Commercial Workers International Union ("UFCW International") and UFCW Local 1657(doc. 32), a memorandum in support of said motion (doc. 33), plaintiff's opposition (doc. 34), evidentiary submissions in support of said opposition (doc. 35),

1

and the defendants' reply briefs (docs. 41 and 42). Defendants UFCW International and UFCW Local 1657 advance three separate arguments in support of their motion for summary judgment, while defendant FAIR offers two such arguments. Because these arguments are substantially similar, the motions have been consolidated for adjudication and are addressed together below.

## **Factual Background**

The pertinent facts, taken in the light most favorable to the plaintiff, are as follows:

The United Food and Commercial Workers Union Local 1657 (hereinafter "the Local" or "Local 1657") is a labor organization that collectively bargains for its members in a variety of industries in Alabama, Mississippi, and northwest Florida. *See* Declaration of Donald Wright, ¶ 4. The United Food and Commercial Workers International Union (hereinafter "the International" or "UFCW International") is a labor organization with affiliated members and local chapters in the United States and Canada. *See id.* at ¶ 5. The Federation of Agents and International Representatives ("FAIR") is a labor organization as defined in the National Labor Relations Act, and represents a bargaining unit of Local 1657 employees, including business agents. *See id.*

Plaintiff Rodney Dillard began working at the Local in 1995. *See* Dillard depo.

at 63. Prior to that date, he had worked in temporary capacities for UFCW International off and on from 1987 to 1995.[1] Plaintiff had applied for a position as a union representative over a year earlier, and when he was not hired filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging discrimination because the Union had hired several other individuals and not him. *See id.* at 55-61. Plaintiff was subsequently hired and began working as a "business agent" on January 1, 1995. *Id.* at 63.

Plaintiff was told he "would be servicing nursing homes and grocery stores in the Birmingham area." *Id.* at 64. Plaintiff's "duties were to sign up new members, to handle any grievances, distribute information, [and] to assist the president in whatever manner he deemed necessary in those facilities." *Id.* at 65. These responsibilities were not formally laid out in a written job description; they are simply "what [plaintiff] was told" to do. *Id.* at 65-66. Plaintiff also organized workers by participating in organizing campaigns on a regular basis. *See id.* at 112-14, 153-55, 178-80.

Plaintiff was involved in a prior lawsuit against the Union in 2001, when he sued over overtime pay which he claimed the Union owed him. *See id.* at 224-25.

---

[1] *See generally* Dillard depo. at 23-54 for a description of plaintiff's responsibilities during this time period.

Plaintiff's professional responsibilities were largely unchanged until 2008,[2] when he was given additional responsibilities by virtue of his appointment as a union trustee of Local 1657's legal assistance fund. *See id.* at 142-48. Plaintiff held this position until April 16, 2010. *See id.* at 148. As a trustee, plaintiff was a fiduciary with responsibility over the money paid into the fund, although he received no compensation in addition to his normal salary for his service as trustee. *See id.* at 151.

In either January or February of 2008, plaintiff was sent to organizer training in Maryland. *See id.* at 167-69. Plaintiff had assisted his superiors with organizing activities prior to this time (*see generally id.* at 164-83), but avers he was never assigned the responsibility for organizing within the jurisdiction of Local 1657, and was never assigned the responsibilities or title of "Director of Organizing" or "Organizing Director." *Id.* at 183-84. He did testify that at times, other Union staff members would "call [plaintiff] and ask questions about organizing . . . when maybe they might have questions about what or how to do." *Id.* at 184-85. He also testified he was never introduced by his superior as "Director of Organizing" or "Organizing Director" for the Union, and that he might have signed letters representing himself as "Organizer," but never as "Organizing Director," if he was organizing for a

_____

[2] Plaintiff's deposition provides a lengthy description of his activities during the time he worked in his original capacity as "business agent," which was at least until 2008. *See generally* Dillard depo. at 66-143.

4

"particular project." *Id.* at 185, 191-92. He testified that he would have begun signing letters representing himself as an organizer to the NLRB in approximately 2005 or 2006. *See id.* at 192.

Local 1657 officials claim that plaintiff was terminated because he refused a direct assignment to go to Chicago to perform services requested by the Local. *See* Vincent depo. at 62-63. Plaintiff denies that he was ever instructed to go to Chicago. *See* Dillard depo. at 289-90. When plaintiff arrived at work on August 9, 2010, he was informed by a secretary, Janice Lewis, that she needed a copy of his driver's license in order to make travel reservations. *See id.* at 280, 328-29. When plaintiff inquired as to the nature of these reservations, Ms. Lewis informed him that she needed to book a flight to Chicago for a business trip, and that "somebody" would "let [plaintiff] know" about the nature of the trip, which plaintiff claimed not to know about at the time. *Id.* at 280. Twice more that same day, one of the deputy trustees, James Richardson, requested that plaintiff give Lewis a copy of his driver's license, and plaintiff refused to do so. *See id.* at 290. Later that afternoon, Richardson and Al Vincent, regional director and international vice president for the International (*see* Vincent depo. at 7) met with plaintiff in his office, where they informed plaintiff that he was being terminated for gross insubordination for refusing the assignment to go to Chicago. *See* Dillard depo. at 291-92; Vincent depo. at 67-68; Richardson depo.

at 50. Plaintiff claims that he did not refuse to travel to Chicago by refusing to provide his driver's license to Lewis (*see* Dillard depo. at 289, 291-92) because he did not receive an email providing information about the trip until later in the day on August 9th, after Lewis first asked him for the driver's license (*see id.* at 284); regardless, email records indicate, and plaintiff himself concedes, that plaintiff forwarded the email to himself at 12:23:19 p.m. on August 9th, several hours before his meeting with Richardson and Vincent.[3] *See id.* at 283-84.

After plaintiff's termination, FAIR filed a grievance on his behalf. *Id.* at 302. The FAIR bargaining unit at Local 1657 includes business agents but does not include the "Organizing Director." *Id.* at 308-09, 313. Steve Marrs,[4] a FAIR executive vice president, began an investigation of the grievance, interviewed plaintiff, and allowed him to provide information in support of his claim. Marrs depo. at 10, 20-21. After investigation, Marrs determined that plaintiff had been insubordinate, and that this insubordination had resulted in his termination. *See id.* at 50-51. Marrs further concluded that plaintiff was Organizing Director at the Local and therefore not in the

---

[3] Plaintiff does assert that the timestamp on the email must be incorrect because "the e-mails were not working on [August 9th]," but he offers no evidence to support this assertion. *See* Dillard depo. at 281-82, 283-84.

[4] Some documents in the record refer to this individual using the surname "Marrs," whereas some spell it "Mars." Because the majority of the documents use the former spelling, the court has adopted this spelling of the surname.

collective bargaining unit represented by FAIR. *See id.* at 17-18, 30, 50. Based upon these determinations, Marrs concluded that the probability of success at arbitration was remote, and FAIR would therefore not pursue the grievance. *See id.* at 50-51; Dillard depo. at 330.

## Standard of Review

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986).  The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the non-movant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970). All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  However, all "doubts" need not be so resolved.  *Barnes v. Southwest Forest Industries, Inc.,* 814 F.2d 607, 609 (11th Cir. 1987).  Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v.*

*Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990).  In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986).  Speculation does not create a genuine issue of fact.  *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).  "'The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case . . . . A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.'"  *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).  A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment.  *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir. 1991).

## Legal Analysis

Defendants UFCW International and UFCW Local 1657 advance three separate

arguments in support their motion for summary judgment, while defendant FAIR offers two such arguments. These arguments are addressed in turn below.

## I. Plaintiff's FLSA Violation Claim

### A. Applicability of FLSA Overtime Compensation Provisions to Plaintiff

The Fair Labor Standards Act (hereinafter "the Act") provides that employees are to be paid time-and-a-half for hours worked in excess of forty hours each week. *See* 29 U.S.C. § 207(a)(1). In his complaint, plaintiff seeks damages for unpaid time and liquid damages from defendants, arising from his allegations that defendants Local 1657 and the International willfully failed to compensate plaintiff properly for all hours worked in excess of forty hours during plaintiff's employment. *See* Compl. (doc. 1) at ¶¶ 1, 22. However, the Act exempts from the overtime pay requirement "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). Applicable federal regulations further define "employee employed in a bona fide administrative capacity" as "any employee" (1) who is compensated at a rate of at least $455 per week, (2) whose primary duty is "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," and (3) "[w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a) (2009). Thus, if

defendants can establish that plaintiff was employed in a bona fide administrative capacity, he was exempt from the overtime pay requirements, and this count of his complaint fails on its face.

### i. Compensation Prong

Plaintiff admits in his complaint that his income exceeded $455 per week; *see* Compl. (doc. 1) at ¶ 15. The first prong of the test is therefore established.

### ii. "Work Directly Related to the Management or General Business Operations" Prong

The second prong of the test is met if plaintiff's primary duty is "the performance of office or nonmanual work directly related to the management or general business operations of the employer or the employer's customers," 29 C.F.R. § 541.200(a)(2) (2009). Work that is "directly related to management or general business operations" includes, but is not limited to, "work in functional areas such as . . . marketing; . . . personnel management; human resources; employee benefits; labor relations; . . . and similar activities." 29 C.F.R. § 541.201(b) (2009). Further, these functions are exempt if rendered for the employer or its customers. *See* 29 C.F.R. § 541.201(c) (2009).

In *Webster v. Public School Employees of Washington, Inc.*, 247 F.3d 910 (9th Cir. 2001), a union representative that performed the same negotiation and

enforcement functions as plaintiff was found to be an exempt employee. *See id.* at 917-918. The employee in *Webster* negotiated collective bargaining agreements, presented them to the membership for consideration, and enforced the contracts by processing the grievances arising from the agreements and acting as advocate during the grievance process on behalf of the members. *See id.* at 912-14. The Court held that the representative was not entitled to overtime pay because the negotiation and grievance processing functions fell squarely within the regulatory exemptions. *See id.* at 914-17. In *Douglas v. Argo-Tech Corp.*, 113 F.3d 67 (6th Cir. 1987), the union negotiated an agreement which provided that the union officers would remain on the employer payroll but would spend their time handling grievances and other functions "to ensure that [the employer] followed the terms of the collective bargaining agreement." *Id.* at 72. The union representative assigned to the task worked in excess of forty hours per week and sought overtime pay. The Court held that his function was essentially that of a labor relations director, an exempt position under the regulations, and found that the union representative was therefore not entitled to overtime pay. *See id.* at 72-73.

Like the plaintiffs in the two cases above, the present plaintiff's job functions easily fall within one or more of the specified exempt categories. By his own testimony, plaintiff's "duties were to sign up new members, to handle any grievances,

11

distribute information, [and] to assist the president in whatever manner he deemed necessary in those facilities." Dillard depo. at 65. Elsewhere he testified he would "sign up new members, receive grievances, assist employees with filing grievances, [and] pass the information on to the union representative." *Id.* at 76. In short, all of the functions which Dillard performed for Local 1657—including enforcement of the collective-bargaining agreement, negotiation, organizing, and assisting the president with his administrative responsibilities—are substantially identical to the enforcement functions as the union representatives in *Webster* and *Douglas*. Moreover, all of the functions were non-manual work. If the employment responsibilities of the representatives in *Webster* and *Douglas* were exempt administrative activity that is directly related to "management or general business operations" of the unions in those cases, so must plaintiff's be in this case. The second prong of the test is therefore established.

### iii. "Matters of Significance" Prong

The third prong of the test is met if plaintiff was an employee "[w]hose primary duty include[ed] the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a) (2009). "In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various

possibilities have been considered. The term 'matters of significance' refers to the level of importance or consequence of the work performed." 29 C.F.R. § 541.202(a) (2009). Notably, "employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level. Thus, the term 'discretion and independent judgment' does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review." 29 C.F.R. § 541.202(c) (2009).

The Courts in *Webster* and *Douglas* both reached the conclusion that employment responsibilities functionally identical to those performed by plaintiff required "the exercise of discretion and independent judgment" and that the issues he dealt with are matters of significance. *See Webster*, 247 F.3d at 916; Douglas, 113 F.3d at 72-73. Like the union representative in *Webster*, plaintiff assisted with the negotiation of collective bargaining agreements by communicating with members and drafting proposed contract language. The Court held that "[t]he importance of the issues decided by the collective bargaining agreements and the procedures by which the agreements [were] negotiated place[d] Webster's negotiations squarely within the scope of exempt administrative work." 274 F.3d at 916. Like the union representative in *Douglas* (*see Douglas*, 113 F.3d at 72-73) plaintiff exercised discretion and independent judgment regarding grievances. Plaintiff evaluated complaints and

13

determined the proper course of action based upon the complaint, including making the determination as to whether there was a contractual violation and if so, whether the Local would challenge the company's action. *See* Dillard Depo. at 72-75, 80-89. As plaintiff stated in his deposition, "it would be my decision to move it to the next step of the process." Dillard Depo. at 86. Moreover, the regulations recognize that grievance processing is exempt administrative activity. *See* 29 CFR §541.202(b) ("Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to: . . . whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.").

Plaintiff exercised at least as much discretion as to matters of significance as either of the representatives in *Webster* or *Douglas*. Consequently, he meets the third prong of the administrative exemption.

Having met all three prongs of the administrative exemption to the FLSA's overtime pay requirements, plaintiff is not eligible for FLSA overtime pay, and the first count of his complaint fails on its face. Summary judgment for the defendants is therefore appropriate on this count.

## II. Plaintiff's Hybrid §301 Breach of Contract/Breach of Duty of Fair Representation Claims

In the second count of his complaint, plaintiff alleges that "[a] collective bargaining agreement [hereinafter, "CBA"] existed between FAIR, on the one hand, and Local 1657 and the International Union, on the other hand" that was "reached, in part, to protect the terms and conditions of [plaintiff's] employment with Local 1657 and the International Union," and that "Local 1657 and the International Union breached the [CBA] when they wrongfully terminated [plaintiff's] employment." Compl. (doc. 1) at ¶¶ 26-27. The Complaint continues, "[i]n violation of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), FAIR breached its duty of fair representation of Dillard by its perfunctory investigation of Dillard's grievance and failure to pursue the grievance through arbitration." Compl. (doc. 1) at ¶ 28.

Whether plaintiff's allegations have merit hinges on whether plaintiff was an employee covered by the CBA. Defendants have presented overwhelming evidence that plaintiff was not, and the record is replete with examples of instances where plaintiff admits, either explicitly or implicitly, that he is exempt from the bargaining unit.

In 2000 plaintiff had a dispute with Local 1657 regarding his employment. He was party to a lawsuit which sought to obtain overtime pay pursuant to FLSA. Plaintiff's brief opposing summary judgment stated that "while the plaintiffs are protected by the FLSA, they are exempt from its overtime provisions . . . ." *See*

Wright declaration (doc. 29-1) ¶ 29 *and* Exh. C. at 27. The undisputed facts underlying that claim are similar in form and substance to those underlying the present claim; plaintiff was a salaried employee exempt from the overtime provisions of the FLSA. Plaintiff cannot have his cake and eat it too; either the overtime provisions apply to him, or they do not. He cannot pick and choose which it will be depending on what lawsuit he has pending at the time.

Moreover, on numerous occasions, and despite his denials to the contrary (*see* Dillard depo. at 183-85, 191-92), plaintiff represented himself as an "Organizing Director" of Local 1657—a position expressly excluded from the bargaining unit by the language of the CBA. *See* Dillard Depo. at 308-09, 313; Heise Decl., Exh. B at 5 (defining the bargaining unit as "Full-time Representatives/Organizers and the Officer Clerical employees, *excluding* the President/CEO, Secretary-Treasurer, Executive Assistants to the President/CEO (up to a maximum of three), Membership Service Director, *Organizing Director*, Executive Board Members, Confidential Secretary/Office Manager, Temporary Employees, VOC Employees, Special Project Employees, Guards and Supervisors as defined by the act" (emphasis added)); *see also* Marrs depo. at 17-18, 30, 50; Dec. Wright Exh. G; Dec. Wright Exh. L, p. 5. For example, Exhibit G to UFCW Defendants' Declaration of Donald Wright contains minutes from a 2008 Local 1657 membership meeting at which plaintiff's promotion

16

was acknowledged. As these minutes reflect: "Rodney Dillard is our Director of Organizing." Consistent with this fact, FAIR's business records establish that plaintiff has not paid dues to FAIR since mid-2008 as a result of his promotion. *See* Crespillo Decl. at ¶ 2. The promotion out of the bargaining unit is also evidenced by the so-called "withdrawal card" issued by FAIR to plaintiff in 2008. *See* Crespillo Decl. at ¶ 3, *and* Exh. B; Heise Decl. at ¶ 5. Accordingly, plaintiff was not listed in an October 2008 letter from former Local 1657 President Elaise Fox to FAIR, identifying the then-current FAIR members. *See* Crespillo Decl. at ¶ 4 *and* Exh. C. Further, Local 1657 had business cards printed identifying plaintiff as the Organizing Director. *See* Thoreen Decl., Exh. B at 29:11-14; Exh. D at 92:11-95:2 & Exh. 47 (including a copy of plaintiff's business card as well as proofs from the printer). And perhaps most telling, plaintiff expressly identified himself as Local 1657's "Organizing Director" in correspondence he wrote on behalf of the union. *See* Wright Decl., Exhs. J & K. In both documents, plaintiff's signature appears above his name, "Rodney Dillard," and his title, "Organizing Director."

As these numerous facts indicate, and by plaintiff's own admission, plaintiff was not a member the bargaining unit represented by FAIR because he was Organizing Director for Local 1657.

17

## A. Plaintiff's Allegation that His Termination Breaches the Collective Bargaining Agreement

Because, as established *supra*, plaintiff was not a member of the bargaining unit, he was not protected by the CBA. Thus, plaintiff was an at-will employee, subject to discharge by Local 1657 for any cause or no cause at all.

Just cause existed to discipline plaintiff because he was insubordinate by directly refusing a work assignment. Union representatives assert that the reason for plaintiff's discharge was the direct refusal to go to Chicago when so instructed by Vincent. *See* Dillard Depo. at 291-92. While plaintiff disputes that he was instructed to go to Chicago, the facts demonstrate that plaintiff admits he refused a direct instruction from his supervisor to provide a copy of his driver's license for the purpose of travel reservations on two occasions. *See id.* at 290. Insubordination is a well-recognized justification to discharge an employee. By refusing to obey the instruction, he violated one of the fundamental principles of collective bargaining: comply now, grieve later. *See* Elkouri, Elkouri, and Ruben, ed., *How Arbitration Works*, 6th edition p. 262 (BNA) (recognizing the general principle that employees working pursuant to collective bargaining agreement may not engage in self help, but must first comply with an order and then file a grievance). Plaintiff's refusal to obey a direct order was insubordination, and therefore the union defendants had just cause

18

to terminate him without violating the CBA. Summary judgment for the union defendants on this count of plaintiff's claim is thus appropriate.

Notably, summary judgment in favor of UFCW International is also appropriate because the International was not plaintiff's employer; Local 1657 was his employer. Plaintiff's contention that the International became his employer or the alter ego of Local 1657 because a trusteeship was imposed pursuant to 29 U.S.C. § 461 cannot withstand scrutiny. The International was not the trustee. Rather, an individual was appointed whose duty it was to reorganize the local and restore its proper function. A trustee appointed pursuant to 29 U.S.C. § 461 is best understood as an independent administrator assigned to reorganize the subordinate body with long-term independence as the goal. A trustee appointed pursuant to 29 U.S.C. § 461 assumes the duties of the local union officer he replaces. *See Hansen v. Guyette*, 636 F. Supp. 902 (D. Minn. 1986). The obligation of the appointed trustee is to carry out the interests of the local union and not the appointing entity. *See Campbell v. Int'l Bhd. of Teamsters*, 69 F. Supp. 2d 380, 385-86 (E.D.N.Y. 1999). Federal labor policy mandates that the distinction between the international and subordinate bodies be maintained in order to preserve the long-term independence of the subordinate body. The distinction is necessary to prevent the manipulation of the subordinate body by the international body. *See, e.g.*, 29 U.S.C. §463 (prohibiting use of local union votes

to advantage international unions in elections). Trusteeships can be imposed pursuant to 29 U.S.C. § 461 only with cause and due process. Accordingly, trusteeships are closely monitored by the Department of Labor to make certain that the subordinate body remains independent of the body imposing the trusteeship. *See* 29 U.S.C. §§ 461, 462.

The independence of the trustee is also established by the terms of the UFCW Constitution. *See* Dec. Wright, Exh. B, Article 9, Section 2 (A) (the trustee appointed "shall administer the affairs of the chartered body" during the term of the trusteeship). By appointing and directing a trustee to administer the affairs of the Local, the International thereby delegated its authority to the trustee. The trustee served as the agent of the Local, not the International. Thus, Vincent was authorized to perform the functions of the Local Union president which includes hiring and firing of employees. Dec. Wright, Exh. A, Article VII, Section C (4). His decision to terminate plaintiff was his alone, and was well within the authority granted him by the terms of his appointment and law. Accordingly, summary judgment for the union defendants is appropriate on this count of plaintiff's claim.

**B. Plaintiff's Duty of Fair Representation Claim against FAIR**

Plaintiff has alleged that defendant FAIR breached its duty to fairly represent him when it ultimately declined to process his grievance. To prevail on a duty of fair

representation (hereinafter, "DFR") claim, plaintiff must prove both a breach of the DFR by the union and breach of the collective bargaining agreement by the employer. *See Parker v. Connors Steel Co.*, 855 F.2d 1510, 1519 (11th Cir. 1988). The DFR is breached only if the decision not to pursue the grievance is arbitrary, discriminatory, or in bad faith. *See Vaca v. Sipes*, 386 U.S. 171, 190 (1967). The evidence in this case demonstrates that FAIR carefully considered plaintiff's grievance and chose not to pursue the grievance both because plaintiff was terminated for cause and because plaintiff was not a member of the bargaining unit. For both reasons, his grievance could not be won at arbitration.

As established *supra*, plaintiff was an Organizing Director for Local 1657, a position that is expressly without the CBA. Accordingly, plaintiff's termination could not breach the CBA because plaintiff was not covered thereby, and FAIR owed plaintiff no DFR because he was not a member of the bargaining unit. Regardless, even if FAIR's belief that plaintiff was not a member of the bargaining unit were erroneous, FAIR's refusal to process plaintiff's grievance based on this ground does not constitute the type of arbitrary, discriminatory, or bad faith conduct needed to support a DFR claim. *See Smith v. Local 7898, United Steelworkers of Am.*, 834 F.2d 93, 96 (4th Cir. 1987) ("'honest, mistaken conduct' does not violate the union's duty of fair representation" (quoting *Amalgamated Ass'n of Street Employees v. Lockridge*,

403 U.S. 274, 301 (1971)).

Moreover, even if plaintiff were a member of FAIR's bargaining unit—which the court reiterates he is not—plaintiff's termination for cause provides an additional reason that summary judgment is appropriate for FAIR. Any grievance challenging plaintiff's justifiable termination would not have been meritorious, such that it was eminently reasonable for FAIR to decline to pursue the grievance on plaintiff's behalf. Plaintiff has presented no triable issue of fact on the question of whether his termination for insubordination violated the just cause provision of the CBA. *See Thompson v. Aluminum Co. of Am.*, 276 F.3d 651, 656 (4th Cir. 2002) (in hybrid action under 29 U.S.C. §185, "employee must prove both 1) that the union breached its duty of fair representation and 2) that his employer violated the [CBA]").

Plaintiff does not dispute the circumstances that led to his termination, *viz.*, his refusal to give a copy of his driver's license to Janice Lewis despite being instructed to do multiple times by his superiors. His sole justification for that insubordination rests not on a disputed issue of fact, but rather on a mistaken view of the law. Specifically, plaintiff suggests that he had a right to resist the assignment because it allegedly came from the UFCW International Union, which did not have the authority to order plaintiff to go to Chicago. *See* Plaintiff's Opp. (doc. 34) at 10. Instead, plaintiff argues that "[t]he proper channel was for the International to go through

22

Local 1657's President and request assistance." *Id.* at 10.

Plaintiff agrees that the assignment was given by the trustees of Local 1657 (*see id.* at 10-11; Vincent Depo. at 48:6-11), but argues that it improperly came from the International, apparently based on the fact that the trustees were employees of the International and had been appointed under the authority of the International's President. But that argument is premised on a misunderstanding of the nature of a trusteeship under the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. §401, et seq. (the "LMRDA").

As a matter of law, a trustee steps into the shoes of the local union's officers, assumes their rights and obligations, and acts on behalf of the local union. *See Tile, Marble, Terrazzo, Finishers, Shopworkers & Granite Cutters Int'l Union v. Ceramic Tile Finishers Union, Local 25*, 972 F.2d 738, 746 (7th Cir. 1992) (affirming that a trustee "assumes the duties of the [local's] officers and directors"). "Subject to any limiting provisions in the union's constitution, a trustee has all of the powers possessed by the subordinate body prior to the trusteeship." Labor Union Law & Regulation §6.II.D.3.b at p. 583 (William W. Osborne, Jr. et al., eds., 2003); Wright Decl., Exh. B at Art. 9(F)(2)(c) (UFCW International Constitution: "the officers of the chartered body shall be suspended from office, *and their functions shall pass to the trustee* . . . ." (emphasis added)).

23

Plaintiff does not dispute that his employer, Local 1657, had a right to assign him to the Wal-Mart campaign in Chicago and fire him for his refusal to do so. Because the trustees stood in the shoes of the Local's officers, as a matter of law they had that authority. Plaintiff has thus presented no issue of material fact on the issue of whether he was terminated for just cause. Therefore, the CBA was not violated.

Finally, plaintiff has not cited any disputed facts that either undermine the reasonableness of FAIR's decision or suggest that it was motivated by discriminatory animus or bad faith. While plaintiff's deposition testimony suggests that he will deny his acts of insubordination, any such conflicting testimony does not preclude summary judgment. Rather, any such factual dispute is not material; disregarding it entirely, and considering only the conversations FAIR representatives had with others at Local 1657, summary judgment is nevertheless proper. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Plaintiff's duty of fair representation claim must, therefore, fail.

Because the evidence demonstrates that plaintiff was not a member of FAIR's bargaining unit at the time of his termination, FAIR owed him no duty of fair representation, and summary judgment in FAIR's favor is appropriate on this count

24

of plaintiff's claim.

## Conclusion

Having considered the foregoing and finding that the plaintiff has failed to establish a genuine issue of material fact sufficient to allow this case to proceed to trial, the court **ORDERS** that the defendants' motions for summary judgment (docs. 22 & 32) be **GRANTED**.  The court shall so rule by separate order.

**DONE** and **ORDERED** this 9th day of February 2012.

_____

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE